UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

RUSSELL L. STEWART, *ET AL.*            )
                                        )
v.                                      )    NO. 2:11-CV-97
                                        )
ROBERT BOSCH, LLC, *ET AL.*             )

## **REPORT AND RECOMMENDATION**

The defendants have filed a motion to dismiss based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 19). The district judge has referred that motion to the magistrate judge for a report and recommendation. Oral argument was held on February 13, 2013.

In considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded allegations of fact in the complaint, and the complaint must be construed in the light most favorable to the plaintiff. *See, Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

Robert Bosch, LLC ("defendant") owned and operated a facility in Johnson City, Tennessee, which manufactured various components or parts for automobile manufacturers. The four plaintiffs are former employees of defendant in its Johnson City facility.

The Johnson City plant was unionized. All employees were represented by Local Union No. 2155 of United Auto, Aerospace and Agricultural Implement Workers of America ("the Union").[1]

In October 2008, defendant and the Union negotiated and executed, as part of their

---

[1]Doc. 20-2.

Collective Bargaining Agreement,[2] an Insurance Plan[3] and a Pension Plan,[4] both of which were subject to the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.*

In October 2009, defendant announced that it intended to close its Johnson City plant. Defendant and the Union then negotiated a "Closure Agreement" which was signed by their representatives in April 2010.[5] That Closure Agreement stated in its opening paragraph that it was executed for the "purpose of resolving all issues regarding the effects of the closure of [defendant's] Johnson City, Tennessee Plant on bargaining unit employees covered by the 2008 Collective Bargaining Agreement."

The plant closed in July 2010.

The four plaintiffs, on behalf of themselves and as representatives of a proposed class consisting of former similarly-situated employees of defendant, filed suit against defendant and its ERISA Plans, asserting that defendant closed the plant solely to avoid upcoming obligations under those ERISA Plans to a sizable number of employees, including these plaintiffs.

It is important to understand what those "upcoming obligations" were. Or, conversely, what they were not. The Pension Plan had, for lack of a better description, two

---

[2]Doc. 20-2.

[3]Doc. 20-3.

[4]Doc. 20-4.

[5]Doc. 20-1.

components. First, it provided for "Normal Retirement" benefits. After eight years of credited service, and at age sixty-five, an employee could retire with a benefit as calculated by a formula set out in the Plan.[6] The Normal Retirement benefit is not an issue in this litigation.

Second, the Pension Plan provided for "Early Retirement," and it is that benefit which is the primary subject of this suit. An employee who was at least fifty-five, but not sixty, and who had completed twenty-five or more years of Credited Service; or an employee who was at least sixty but not yet sixty-five, and who had completed ten or more years of credited service; or an employee who was under the age of fifty-five but who at least thirty years of credited service, could elect to take Early Retirement. The benefit received by an early retiree consisted of payments to the employee until he attained age sixty-two, at which time he became entitled to the Normal Retirement Benefit, albeit in a reduced amount.[7] Early retirees also were eligible for medical benefits.[8]

None of the plaintiffs met any of the various age and years-of-service requirements to qualify for the Early Retirement benefit. Also, the health insurance plan, to the extent an early retiree was entitled to a continuation of health insurance benefits, is at issue in this

---

[6]Doc. 20-4, p. 7.

[7]Doc. 20-4, ¶ 7.2B.

[8]Doc. 20-3, p. 10, ¶ F.

litigation[9]

Count One of the complaint asserts a claim for "interference with protected ERISA rights" under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1140. Section 1140 makes it unlawful for an employer to discharge or otherwise discriminate against a participant for exercising a right to which that person is entitled under the employees' ERISA Benefit Plan. That section further provides that section 1132, which allows an ERISA participant to file a civil suit to enforce his rights, is available to enforce section 1140. Section 1132 (a)(3), upon which the plaintiffs rely in this suit, allows a court to enjoin further violations, or to grant "other appropriate equitable relief," or "to redress such violations," or "to enforce any provisions of ERISA or the terms of the Plan."

Defendant's alleged "interference," of course, was the closure of its Johnson City plant to avoid the accrual of certain benefits under defendant's ERISA Plans. Plaintiff asks for reinstatement ("if possible"), or back and future wages as "equitable relief."

Count Two asserts a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). This section allows a participant to recover benefits due him under the Plan; or to enforce his rights under the Plan; or to clarify his rights to future benefits under the terms of the Plan. Plaintiffs insist that this statute allows them to recover the full value of the ERISA-Plan benefits "to which

---

[9] It is plaintiffs' theory that (1) since defendant closed its plant to avoid its obligation to the plaintiffs for early retirement benefits; and (2) since that closure necessarily terminated plaintiffs' health insurance coverage and potential eligibility for continued health insurance coverage as early retirees, defendant therefore should be responsible for paying medical expenses incurred by the plaintiffs which would have been covered by the health insurance plan but for the plant's closing. *See,* plaintiffs' Supplemental Memorandum, Doc. 34, at p. 5.

they are already entitled but did not receive due to [defendant's] interference."

Plaintiffs' attorney stated during oral argument that the plaintiffs were not seeking pension benefits under Count Two, but only health insurance benefits. Counsel provided an example: if a plaintiff incurs a medical expense which would have been covered by the defendant's health insurance plan but for the plant's illegal closure, the defendant should be required to pay that medical expense.

Count Three is a claim under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*. The plaintiffs' rationale underlying their claim under THRA is: Tenn. Code Ann. § 4-21-401 makes it a "discriminatory" practice to discharge an employee on account of that employee's age, and age is one of the two factors used to determine when an employee of defendant became entitled to its pension and health insurance benefits.

The defendant flatly denies that it was motivated to close its Johnson City facility to prevent a sizable number of its employees from becoming vested – *i.e.*, entitled – to the early retirement benefits, and the accompanying health insurance benefits. But as far as a motion to dismiss is concerned, the facts alleged in the complaint must be accepted as true and construed favorably to the plaintiffs. The facts alleged in the complaint, if true, *could* support a finding that defendant closed its plant to foreclose the plaintiffs' ultimate entitlement to pension and health insurance benefits. Thus, the defendant's motion to dismiss must be analyzed with that underlying assumption.

*DISCUSSION*

As already mentioned, no employee who had become vested in – as in "qualified for"- normal retirement benefits is or will be a party to this suit. To put it bluntly, they have nothing about which to complain.

It is those employees who had not reached the necessary age and attained the required years-of-service to qualify for the early retirement benefits and the accompanying health insurance benefit who are plaintiffs and potential class members.[10] To repeat, the early retirement benefits provided an amount of income to an employee until age 62, at which time he could begin receiving a reduced normal retirement benefit. The complaint explicitly says that had the plant not closed, the plaintiffs ultimately would have attained the age and service requirements for early retirement, and that defendant closed the plant to prevent them from doing so:

> This lawsuit asserts that Bosch's decision to close the Johnson City plant was made for the purpose of interfering with attainment of supplemental retiree benefits due to vest in one to two years.[11]

> It is the gravamen of this lawsuit that the true reason for the Johnson City plant closure was to avoid pension and retiree health costs that, under the terms of the Employees Collective Bargaining Agreement, substantially increase as this workforce reaches the 55-years plus + [sic] 25 – or 30 – year tenure marks.[12]

The "temporal status" of the Early Retirement and accompanying health insurance benefits at the time the plant closed must be determined. With reference to the plaintiffs,

---

[10] And they will never qualify for the Early Retirement benefit since the plant has closed.

[11] Second Amended Complaint, Doc. 13, ¶ 1 [Italics supplied].

[12] Second Amended Complaint, Doc. 13, ¶ 2.

were these benefits "vested," or were they contingent? They were not vested, and it reasonably cannot be argued that they were. They were contingent upon an employee reaching a certain age with an accompanying specific number of years of service, and none of the plaintiffs had fulfilled those requirements when the plant closed. Plaintiffs somewhat backhandedly argue that the benefits were vested in the sense that the plaintiffs were continuing to accrue time and service, and ultimately would have reached the magic mark, if defendant had not closed the plant. This is not what "vested" means. "Vested" means "entitled to" in the sense that a legal obligation has arisen. In the case of a pension benefit, it means "due and payable." "To vest benefits is to render them forever unalterable." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

In light of the long-standing understanding of what the word "vested" means, the court now looks to the Closure Agreement negotiated by the Union and defendant. Does the Closure Agreement apply to these benefits? Yes. The very first sentence of the Closure Agreement states that the Union and defendants entered into the agreement for the purpose of resolving *all* issues regarding the effects of the plant's closure on the employees. The Closure Agreement obtained significant benefits for those employees, including these plaintiffs, who had not yet vested in the Pension Plan for early retirement benefits. It provided that the defendant would pay to them the total unused "Personal Absence Allowance" as of the date of the plant's closing; the total unused vacation benefit for 2010; a severance payment in the amount of $1175.00 for each year of the employee's credited service; and a "bonus" payment to each employee in the amount of $1150.00.

The Closure Agreement then concluded with this language:

> Except for those obligations which this Closure Agreement and the 2008 Agreement impose on the Company, on the Union, and on the Local Union and which survive the closure of the Plant, the Company and the Union and the Company and the Local Union hereby mutually release each other from any and all other obligations to each other or to the employees arising out of the closure of the Plant. This release does not apply to claims for pension or retiree health care benefits vested under any collective bargaining agreement, benefit plan, or arrangement, or the law. Rights to vested benefits survive the closure of the Plant. [13]

Plaintiffs rely upon the last two sentences of the language quoted above: "This release does not apply to claims for pension or retiree health care benefits vested under any collective bargaining agreement, benefit plan or arrangement, or the law. Rights to vested benefits survive the closure of the Plant. " They argue that their rights were vested and therefore this language either specifically exempted the early retirement and accompanying health insurance benefits from the operation of the closure agreement or, alternatively, the Union improperly undertook to waive those vested rights. Whichever argument is chosen, it rises or falls with the definition of "vested." The benefits for which these plaintiffs now sue were not vested, as a result of which the exclusionary language on page 4 of the Closure Agreement has no application to those benefits. In short, the early retirement and health insurance benefits were not excluded from the ambit of the Closure Agreement.

Plaintiffs do not argue that the Union had neither the right nor the authority to execute the Closure Agreement on behalf of the employees; indeed, it is obvious that a union has

---

[13] Doc. 20-1, p. 4.

such authority.  *See, e.g., Humphrey v. Moore,* 375 U.S. 335, 347 (1964), and *Curtis, et al. v. Alcoa, Inc.*, 2011 WL 850410 (E.D. Tenn. 2011).  The *raison d'etre* of a union is to represent the employees in the bargaining unit in negotiations with the employer.  It is not called "*collective* bargaining" for no reason.  Unless the resulting agreement is *ultra vires* or illegal, that agreement is binding on every employee in the bargaining unit.  *See, e.g., NLRV v. Sands Mfg. Co.*, 306 U.S. 332, 342 (1939) ("The legislative history of the [National Labor Relations] Act goes far to indicate that the purpose of the statute was to compel employers to bargain collectively with their employees to the end that employment contracts binding on both parties should be made.")  The Closure Agreement was neither *ultra vires* nor illegal *unless* plaintiffs' argument be adopted that they had vested in the Early Retirement aspect of the Pension Plan.  As discussed, the plaintiffs were not vested.

In summation, the Union had the authority to negotiate and execute the Closure Agreement, and that agreement was binding on these plaintiffs. The early retirement and accompanying health insurance benefits were not vested, as a result of which the language in the final paragraph of the Closure Agreement, which exempted *vested* benefits from its scope, did not apply to those benefits.  In obvious recognition that these plaintiffs, and others in their situation, had no vested right to the early retirement and health insurance benefits, the Closure Agreement provided that such employees would be paid monies to which they were not otherwise entitled, in return for which no employee would assert a claim (such as the one in this suit) against the defendant.  A release of "all obligations" encompass any claims under ERISA, as well as any claims under the Tennessee Human Rights Act, unless

9

a court chooses to re-define "all" to mean something less than everything. "All" must mean "everything," or it has no meaning.

## *CONCLUSION*

The Closure Agreement recited that it was intended to resolve *all* issues regarding the effects of the plant's closing on the employees. It recited that the defendant-employer was released from all obligations to its employees arising out of the plant's closure. That release was supported by a *quid pro quo*, i.e., a valuable consideration, which of course were the payments which the affected employees would not have received but for the Closure Agreement and the release therein.

It is recommended that defendants' motion to dismiss, (Doc. 19), be granted.[14]

Respectfully submitted,

                                    s/ Dennis H. Inman
                                    United States Magistrate Judge

---

[14] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).